Filing # 43258044 E-Filed 06/27/2016 01:45:40 PM

**IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA**

**CASE NO.:**

ERIN BREEN,

      Plaintiff,

v.

JUPITER GOLF CLUB, LLC
D/B/A TRUMP NATIONAL GOLF CLUB JUPITER,

and

JOE DIPASQUANTONIO,

      Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, ERIN BREEN ("Breen" or "Plaintiff") by and through her undersigned attorney, hereby files this Complaint against Defendant, JUPITER GOLF CLUB, LLC d/b/a TRUMP NATIONAL GOLF CLUB, JUPITER, a foreign limited liability company ("Defendant JGC"), and JOE DIPASQUANTONIO ("Defendant DiPasquantonio"), in his individual capacity.

## JURISDICTION AND VENUE

1.    This is an action for damages in excess of $15,000, exclusive of interest, costs, and attorney's fees.

2.    Breen's claims against Defendant JGC arise under Title VII of the Civil Rights Act of 1964, 43 U.S.C. 2000e, *et seq*, and Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760, et. seq. for retaliation.

**EXHIBIT "A"**

3.     Breen's claims against Defendant DiPasquantonio arise under Florida law.

4.     Jurisdiction is proper in this Court pursuant to the FCRA.

5.     This Court has concurrent jurisdiction pursuant to Title VII, 42 U.S.C. § 2000e-5.

6.     At all times relevant to this Complaint, Plaintiff was a resident of Palm Beach County, Florida, and is otherwise sui juris.

7.     Defendant JGC maintains a business located at 115 Eagle Tree Terrace, Jupiter, Florida 33477, where Plaintiff was employed.

8.     Upon information and belief, Defendant DiPasquantonio is a resident of Palm Beach County, Florida, and is otherwise sui juris.

9.     At all times relevant to this Complaint, Defendant JGC is a foreign limited liability company engaged in doing business in the state of Florida, including Palm Beach County.

10.    Venue is proper because Defendant JGC does business in Palm Beach County; Defendant DiPasquantonio resides in Palm Beach County; and the events giving rise to this cause of action occurred in Palm Beach County.

11.    At all times relevant to this Complaint, Breen was employed with the Defendant JGC in Palm Beach County.

## COMMON ALLEGATIONS

12.    Breen worked as a supervisor for Trump Kids at Trump National Golf Club, Jupiter.

13.    Breen started her employment with Defendant JGC's predecessor Ritz-Carlton Gold Club & Spa in August 2005.

14.    Upon information and belief, Ritz-Carlton Gold Club & Spa was sold in 2012, and

**EXHIBIT "A"**

the name was changed to Trump National Golf Club, Jupiter.

15.     Until the transition, Breen was a full time employee.  At the time of the transition, Breen was offered a seasonal position by JGC.  At the end of the season, Breen was offered a year round position and remained in the same position until her termination on January 16, 2014.

16.     She was in the position of Kids Club Supervisor and performed the duties of maintaining and overseeing the daily operations of the kids program.

17.     Breen was a well-regarded employee.  All of her performance reviews reflected that Breen "exceeded expectations."

18.     Just a few months before her termination, she was given a pay raise and compliments for her work by Tony Servideo, the General Manager (the "General Manager").

19.     During her employment, particularly during the last several months of her employment, Breen endured unwelcome sexual advances by the Food and Beverage Manager, Defendant DiPasquantonio.

20.     While Breen previously had a good working relationship with Defendant DiPasquantonio, issues began to develop after he began making persistent sexual advances towards Breen.  These comments and advances escalated towards the end of her employment.  In particular, Defendant DiPasquantonio engaged in the following unwelcome and offensive conducts such as:

     a)     calling Breen by pet names such as his "number one," his "Rock" because
            he claimed Breen "had a rock-hard body";

**EXHIBIT "A"**

b)   making repeated sexual jokes and commentary such as dropping

something on the floor and asking Breen to bend over and pick it up;

c)   making sexual advances via text message;

d)   making sexual comments via social media chat such as "everything you

do is cute," "it's hard now," "you should come up to our suite," and

suggesting that he perform oral sex on her; and

e)   making sexual comments and advances on a daily basis at work.

21.   Breen first objected to the harassment by pleading with Defendant
DiPasquantonio, to stop his sexual commentary and advances.  She told him that his
conduct and comments were "unwanted and they need to stop." Defendant
DiPasquantonio responded, "I don't give a shit what these idiots think.  I'm in love with
you, and I will leave my wife for you if you give me a chance."

22.   Despite her objections, Defendant DiPasquantonio's harassment continued.  He
continued to make offensive and unwelcome comments and professed his love for her.

23.   Unable to deter or to stop Defendant DiPasquantonio's sexual advances, Breen
escalated her complaint to her supervisor.

24.   Specifically, Breen formally complained on December 30, 2013 to her direct
supervisor Laura Daniel, the Spa Director, about Defendant DiPasquantonio's sexual
harassment.

25.   Her supervisor was disinterested in her complaint.

26.   Almost immediately after complaining to her supervisor about Defendant
DiPasquantonio's sexual harassment, Breen suffered retaliation.

27.   In January of 2014, just days after making the complaints about Defendant

**EXHIBIT "A"**

DiPasquantonio's unwelcome sexual advances, Breen was falsely accused of time-card theft by Defendant JGC.

28.     Breen was placed on suspension on January 14, 2014 for alleged violations of company policy for time-card theft.

29.     Breen requested proof of the false accusations of time-card theft and an opportunity to discuss, but she was never provided with any such proof On January 15, 2014, Breen received a telephone call from Janine Gill, the Human Resources Director (the "HR Director").  During that call, Breen requested information about the allegations and offered to refute the false accusations of time-card theft.  However, the HR Director stated, "our minds are made up, and there is really nothing you can do to change that. The decision has been made."

30.     Despite Breen's repeated requests, the HR Director refused to provide proof of the alleged time-card theft and further refused to provide Breen with an opportunity to refute the false allegations.

31.     Defendant JGC could have disciplined, coached, suspended, or engaged in other forms of progressive discipline, but instead opted to abruptly terminate Breen's employment without discussion and without allowing Breen an opportunity to review and refute the allegations.

32.     Breen did not engage in any time-card theft.

33.     On January 16, 2014, Defendant JGC terminated Breen's employment.

34.     Despite the fact that Breen was a well-regarded employee who had received pay raises and positive feedback from Defendant JGC throughout her employment, JGC retaliated angst her by terminating her employment for reporting Defendant

DiPasquantonio's unwelcome sexual advances and harassment.

35.     Breen contends that her termination was retaliatory and despite evidence of unwelcome sexual advances the company chose to protect the harasser and punish the victim by terminating her employment.

36.     The alleged reasons for termination, which include time-card theft and socializing with members are false and a pretext for the real motivation, her complaints about a harassing manager.

37.     The retaliation continued even after her separation.

38.     Defendant JGC accused Breen of "gambling" at the work place and same was cited by Defendant JGC as a reason for her sudden termination to the Florida Department of Economic Opportunity.

39.     After Breen was terminated, she received a text message from Defendant DiPasquantonio stating that he was told by the General Manager that he "saved his ass" by terminating Breen and not him.

40.     Breen files this action, as a result of Defendant JGC's retaliatory treatment.

## Exhaustion of Remedies

41.     Prior to initiating this Complaint, Plaintiff filed a Charge of Discrimination with both the Florida Commission on Human Relations (FCHR) and the Equal Opportunity Commission (EEOC) on or about February 21, 2014.  (See true and correct copy of said Charge attached to this Complaint as **Exhibit A**).

42.     Plaintiff received a Right to Sue Notice from the EEOC. (See Right to Sue Notice dated March 29, 2016 attached to this Complaint as **Exhibit B**).

43.     Plaintiff has complied with the statutory prerequisites of the FCRA and Title VII.

**EXHIBIT "A"**

44.   More than one-hundred and eighty days have passed since Plaintiff filed her charge with the FCHR.

45.   Plaintiff timely filed this complaint before the expiration of the Right to Sue notice.

46.   Plaintiff has exhausted her administrative remedies under both the FCRA and Title VII.

## COUNT I
## RETALIATION IN VIOLATION OF
## 42 U.S.C. § 2000e-3 AS TO DEFENDANT JGC

Plaintiff re-alleges and incorporates paragraphs 1 - 46 as fully set forth herein.

47.   Breen is a female employee, subject to the protections of 42 U.S.C. § 2000e-3.

48.   The Defendant is an employer as that term is defined in 42 U.S.C. § 2000e(b).

49.   Defendant JGC employs fifteen (15) or more employees for each working day as part of its daily operation.

50.   The Defendant engaged in retaliatory conduct towards Breen such that she was deprived of her rights under 42 U.S.C. § 2000e-3.

51.   Breen complained about, and opposed what she reasonably believed constituted sexual harassment, which took place at the Trump National Golf Club, Jupiter.

52.   Breen engaged in protected activity in that she complained to her direct supervisor Laura Daniel, the Spa Director, on December 30, 2013 about Defendant DiPasquantonio's sexual harassment.

53.   Thereafter, Defendant JGC engaged in adverse actions:

    a.   By subjecting her to additional harassment,

    b.   By falsely accusing Breen of time-card theft,

    c.   By suspending her,

  d.  By refusing to provide her with any proof of the false time-card theft allegation,

  e.  By refusing to provide her with an opportunity to refute the time-card theft allegations,

  f.  By falsely accusing her of gambling at work, and

  g.  By terminating her.

54. Breen's protected activities and Defendant JGC's adverse actions are causally related.

55. Upon information and belief, in addition to the practices enumerated above, Defendant JGC may have engaged in other retaliatory practices against her which are not yet fully known. At such time as such retaliatory practices become known, Breen will seek leave of Court to amend this Complaint in that regard.

56. Defendant JGC knew or should have known that Breen was being retaliated against for her protected activities.

57. Despite said knowledge, Defendant JGC failed to take any remedial action, and terminated Breen.

58. Breen suffered damages as a result of Defendant JGC's conduct, by and through its agents, employees, and/or representatives.

59. As a direct and proximate result of the intentional retaliatory acts, Breen suffered injury and continues to suffer injury including past and future loss of income and other employment-related benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

60. Defendant JGC's actions or inactions are based upon malice or reckless indifference to the protected rights of Breen, entitling her an award of punitive damages.

61. Breen seeks general, compensatory, and punitive damages, front pay or reinstatement, back pay, prejudgment and post-judgment interest, and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Breen prays for relief as follows: all damages that Breen has sustained as a result of Defendant JGC's conduct, including front pay or reinstatement, back pay, and damages for lost compensation and job benefits that would have been received but for the retaliatory actions of Defendant JGC; prejudgment and post-judgment interest, as provided by law, exemplary and punitive damages in an amount commensurate with Defendant JGC's ability to pay and to deter future conduct; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and such other relief as the Court deems just and proper.

## COUNT II
## RETALIATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLA STAT.
## § 760.10
## AS TO DEFENDANT JGC

Plaintiff re-alleges and incorporates paragraphs 1 - 46 as fully set forth herein.

62. Breen is a female employee, subject to the protections of section 760.10, Florida Statutes.

63. Defendant JGC is an employer as that term is defined in section 760.02(7), Florida Statutes.

64. Defendant JGC employs fifteen (15) or more employees for each working day as part of its daily operation.

65. Breen complained about, and opposed what she reasonably believed constituted

## EXHIBIT "A"

sexual harassment, which took place at Trump National Golf Club, Jupiter.

66.     Breen engaged in protected activity in that she complained to her direct supervisor Laura Daniel, the Spa Director, on December 30, 2013 about Defendant DiPasquantonio's sexual harassment.

67.     Thereafter, Defendant JGC engaged in adverse actions:

      a.      By subjecting her to additional harassment,

      b.      By falsely accusing Breen of time-card theft,

      c.      By suspending her,

      d.      By refusing to provide her with any proof of the false time-card theft allegation,

      e.      By refusing to provide her with her an opportunity to refute the time-card theft allegations,

      f.      By falsely accusing her of gambling at work, and

      g.      By terminating her.

68.     Breen's protected activities and Defendant JGC's adverse actions are causally related.

69.     Upon information and belief, in addition to the practices enumerated above, Defendant JGC may have engaged in other retaliatory practices against her which are not yet fully known.  At such time as such retaliatory practices become known, Breen will seek leave of Court to amend this Complaint in that regard.

70.     Defendant JGC knew or should have known that Breen was being retaliated against for her protected activities.

71.     Despite said knowledge, Defendant JGC failed to take any remedial action, and

**EXHIBIT "A"**

terminated Breen.

72.     Breen suffered damages as a result of Defendant JGC's conduct, by and through its agents, employees, and/or representatives.

73.     As a direct and proximate result of the intentional retaliatory acts, Breen suffered injury and continues to suffer injury including past and future loss of income and other employment-related benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

74.     Defendant JGC's actions or inactions are based upon malice or reckless indifference to the protected rights of Breen, entitling her an award of punitive damages.

75.     Breen seeks general, compensatory, and punitive damages, front pay or reinstatement, back pay, prejudgment and post-judgment interest, and reasonable attorney's fees and costs pursuant to section 760.11(5).

WHEREFORE, Breen prays for relief as follows: all damages that Breen has sustained as a result of Defendant JGC's conduct, including front pay or reinstatement, back pay, and damages for lost compensation and job benefits that would have been received but for the retaliatory actions of Defendant JGC; prejudgment and post-judgment interest, as provided by law, exemplary and punitive damages in an amount commensurate with Defendant JGC's ability to pay and to deter future conduct; reasonable attorney's fees and costs pursuant to section 760.11(5); and such other relief as the Court deems just and proper.

**EXHIBIT "A"**

## COUNT III
## TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIP
## AS TO DEFENDANT DIPASQUANTONIO

Plaintiff re-alleges and incorporates paragraphs 1 - 46 as fully set forth herein.

76.     Breen and Defendant JGC had an employment relationship with Breen working as a Kids Club Supervisor at the Trump National Golf Club, Jupiter.

77.     Defendant DiPasquantonio, as a Food and Beverage Manager of Defendant JGC was aware of the employment relationship between Breen and Defendant JGC.

78.     Defendant DiPasquantonio acted outside the course and scope of his employment by subjecting Breen to unwelcome sexual advances and harassment.

79.     Defendant DiPasquantonio was not acting in Defendant JGC's best interest when he sexually harassed Breen.

80.     Defendant DiPasquantonio caused Breen's termination for improper and vindictive purposes, to wit, caused Breen's termination in order to avoid being terminated for sexual harassment of Breen.

81.     Defendant DiPasquantonio sought to and in fact interfered with Breen's employment relationship with Defendant JGC by having her terminated.

82.     Upon information and belief, Defendant DiPasquantonio interfered with Breen's employment relationship with Defendant JGC by inducing the General Manager to terminate Breen instead of Defendant DiPasquantonio for his sexual harassment conduct.

83.     As a result of the Defendant's actions, Breen has suffered damages.

84.     As a direct and proximate result of the Defendant DiPasquantonio's intentional acts and practices, Breen has suffered injury and continues to suffer injury and

**EXHIBIT "A"**

damages including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses. She further suffers from compensatory damages including emotional distress.

85.     Breen's damages were caused by the Defendant's tortious actions.

86.     Breen is entitled to and seeks general and compensatory damages in an amount to be proven at trial.

WHEREFORE, Breen prays that judgment be entered in her favor against the Defendant DiPasquantonio for general and compensatory damages, as well as any and all additional damages this Court finds proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff further demands a trial by jury for all matters so triable.

Dated this 27th day of June 2016.

SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone:    (561) 653-0008
Facsimile:    (561) 653-0020

s/Cathleen Scott
Cathleen Scott, Esq.
Florida Bar No. 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Secondary Address:  101 Northpoint Parkway
West Palm Beach, FL 33407
Attorney for Plaintiff

**EXHIBIT "A"**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| x | FEPA | |
| x | EEOC | 510-2014-02268 |

Florida Commission on Human Relations

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Erin Breen | c/o (561)653-0008 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| c/o  250 South Central Blvd., Suite 104-A   Jupiter, FL 33458 | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Trump National Golf Club Jupiter | 15+ | 561-691-8700 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 115 Eagle Tree Terrace | Jupiter, FL 33477 | Palm Beach |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| | | | | |
|---|---|---|---|---|
| [ ] RACE | [ ] COLOR | [x] SEX | [ ] RELIGION | [ ] AGE |
| [x] RETALIATION | [ ] NATIONAL ORIGIN | [ ] DISABILITY | [ ] OTHER (Specify) | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)     LATEST (ALL)

January 2014

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. Discrimination Statement — I contend that I was discriminated against on the basis of my gender in violation of The Civil Rights Act of 1964, Title VII, 42 U.S.C. 2000e, the Florida Civil Rights Act, Fla Stat §760. et seq., and local ordinance.

II. Charge Statement- I was a well-regarded employee, who for eight and a half (8.5) years enjoyed a positive employment with Trump National Golf Club as Trump Kids Supervisor.  During my employment with Trump National Golf Club, I made several accomplishments and received multiple salary increases.  Despite this, I was terminated on January 16, 2014.  My termination came following my complaints made on December 30, 2013 about manager Joe DiPasquantonio's sexual advances toward me.  Just two weeks after my complaints, I was falsely accused of time card theft.  After requesting I be provided with video feed or other substantive proof to support this allegation, I was terminated.  I contend I was sexually harassed and later terminated as retaliation for my complaints

ERIN SLEEPER
Commission # FF 063494
Expires October 15, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | *Erin Sleeper* (signature) |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | *Erin Breen* (signature) |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| *Erin Breen* (signature) | 2/21/2014 |
| Date 2/21/2014     Charging Party (Signature) | |

EEOC FORM 5 (Test 10/94) FLID: 8650-218-83-965-0

EXHIBIT A

# EXHIBIT "A"

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Erin Breen<br>c/o Cathleen Scott<br>Scott Wagner and Associates, P.A.<br>250 South Central Blvd. Suite 104-A<br>Jupiter, FL 33458 | From: Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2014-02268 | EDRAS REGISME,<br>Investigator | (305) 808-1819 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*        MAR 2 9 2016

Enclosures(s)

ⵏ MICHAEL J. FARRELL,
District Director

*(Date Mailed)*

cc:   **Respondent's Representative**

Jill A. Martin
Assistant General Counsel
TRUMP NATIONAL GOLF CLUB LOS ANGELES
One Ocean Trails Drive
Ranchos Palos Verdes, CA 90275

**Charging Party's Legal Representative**

Cathleen Scott
Scott Wagner and Associates, P.A.
250 South Central Blvd. Suite 104-A
Jupiter, FL 33458

EXHIBIT B

# EXHIBIT "A"

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than** <u>2 years (3 years)</u> **before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request** <u>within 6 months</u> of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EXHIBIT B

## EXHIBIT "A"